

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00289-CR

Chad Wade **SPENCE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. CRW2101019
Honorable Russell Wilson, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Beth Watkins, Justice
                Lori Massey Brissette, Justice

Delivered and Filed: November 6, 2024

AFFIRMED

Appellant Chad Wade Spence appeals his conviction and sentence for evading arrest or detention with a vehicle. We affirm the trial court's judgment.

### BACKGROUND

On September 19, 2020, Sergeant Darrell Collins of the Wilson County Sheriff's Office observed the driver of a motorcycle—with a passenger on the back—make an improper lane

change. When Collins tried to make a traffic stop, the motorcycle sped away. Collins and the motorcycle then engaged in a high-speed chase for approximately twenty minutes.

Collins reported the motorcycle's license plate number to the dispatcher, who eventually identified Spence as the registered owner. Collins testified that at one point during the chase, the driver of the motorcycle "took a real wide slow turn so [Collins] was actually able to get basically right next to him," which gave Collins "a good facial look at the driver." Collins's dashboard camera video showed that after that interaction, Collins described the driver to a dispatcher as a "male driver with a beard, camo sunglasses" who was driving "a maroon Harley Davidson." Collins testified that the driver's face was not covered, he saw the driver both straight-on and in profile, and he had "the opportunity to get pretty close to [the driver] in the city to get a couple more decent looks at [the driver and passenger] on the motorcycle[.]" Consistent with his supervisor's instructions, Collins terminated the chase before he was able to apprehend the driver.

Based on the dispatcher's report that Spence owned the motorcycle, Collins retrieved Spence's driver's license photograph. He testified he did not have any doubt that the man in the photograph was the driver of the motorcycle, so he obtained an arrest warrant for Spence.

Three weeks later, on October 8, 2020, Deputy Rodney Dennis saw a motorcycle parked outside of a store. He believed it was the same one Collins had chased on September 19, so he called Collins for assistance. While Dennis was waiting for Collins, a man wearing a gray shirt—later identified as Spence—approached the motorcycle, but he turned and went back into the store after he saw Dennis in the parking lot. Witnesses inside the store told Dennis they saw the same man run out a side door. Dennis found Spence hiding in brush near the store, and officers

arrested him. The motorcycle in the store's parking lot was registered to Spence.[1] Collins found a pair of camouflage sunglasses in one of its compartments.

A Wilson County grand jury indicted Spence for evading arrest or detention with a vehicle. After hearing the evidence, the trial jury convicted Spence as charged. The State sought to enhance Spence's punishment based on prior felony convictions, and the trial court found two of the enhancement allegations were true. The court then sentenced Spence to fifty years' confinement. Spence filed a pro se motion for new trial, which the trial court denied by operation of law. *See* TEX. R. APP. P. 21.8(c). This appeal followed.[2]

## ANALYSIS

### *Ineffective Assistance of Counsel*

In his first five issues, Spence argues his trial counsel was ineffective. "Prevailing on an ineffective assistance of counsel issue on direct appeal is difficult[.]" *Limauro v. State*, 675 S.W.3d 368, 375 (Tex. App.—Dallas 2023, no pet.); *see also Jackson v. State*, 877 S.W.2d 768, 772 (Tex. Crim. App. 1994) (Baird, J., concurring) ("As a general rule, one should *not* raise an issue of ineffective assistance of counsel on direct appeal."). The record in a direct appeal typically will not be sufficiently developed to support an ineffective assistance claim because it will not show the reasons for trial counsel's challenged actions. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). As a result, ineffective assistance claims "are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

---

[1] While both motorcycles discussed in this opinion were registered to Spence, the record appears to show they were different vehicles with consecutive license plate numbers.

[2] Spence was initially represented by appointed counsel in this appeal. He filed a motion requesting the dismissal of his original appointed attorney and appointment of new counsel, and the trial court granted the motion. Spence then moved to dismiss his second appointed attorney and to represent himself pro se. After a hearing on Spence's motion, the trial court concluded he was entitled to prosecute this appeal pro se. In this opinion, we analyze the arguments Spence, representing himself, presented on appeal.

***Standard of Review and Applicable Law***

We review claims of ineffective assistance of counsel under a two-pronged test. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Spence bears the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *See Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

On the first prong, Spence must show his trial counsel's representation was so deficient that it "fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions[.]" *Lopez*, 343 S.W.3d at 143. Our review of trial counsel's performance "is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The alleged ineffectiveness "must be firmly founded in the record[.]" *Thompson*, 9 S.W.3d at 813. Where the record is silent as to the reasons for trial counsel's conduct, he is entitled to "the benefit of the doubt," and we must assume that he "had a strategy if any reasonably sound strategic motivation can be imagined." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). In reviewing this question, we do not examine "isolated acts or omissions," but instead analyze trial counsel's performance "in light of the totality of the representation[.]" *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004) (internal quotation marks omitted).

To satisfy the second prong of the *Strickland* test, Spence must establish "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). "The

likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### *Application*

Spence identifies five acts or omissions that he claims constituted deficient performance. We will examine each individually.

### *Failure to Object to Identification*

In his first issue, Spence argues his trial counsel performed deficiently because he did not object to or move to suppress Collins's testimony about his pretrial and in-court identifications of Spence as the evading driver. Because the record is silent about trial counsel's reasons for failing to object to Collins's identification testimony, we may not conclude he was constitutionally ineffective unless his "conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (internal quotation marks omitted). "Trial counsel is not ineffective for failing to make futile objections." *Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd, untimely filed). To prevail on this issue, Spence must establish that the trial court would have erred by overruling an objection to Collins's identification testimony. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

"Determining the admissibility of an in-court identification that is challenged by a defendant requires a two-step analysis," and the defendant bears the burden to establish both steps by clear and convincing evidence. *Loserth v. State*, 985 S.W.2d 536, 543 (Tex. App.—San Antonio 1998, pet. ref'd). First, the defendant must show the pretrial identification procedure was impermissibly suggestive. *Id.* If he satisfies that burden, he must also show the procedure "gave rise to a very substantial likelihood of irreparable misidentification." *Id.* at 544.

"Reliability is the 'lynchpin' question in determining admissibility of identification testimony." *Id*. at 543. The United States Supreme Court has set out five non-exclusive factors to consider in assessing reliability: (1) the opportunity of the identification witness to view the offender at the time of the alleged act; (2) the witness's degree of attention during the alleged act; (3) the accuracy of the witness's prior descriptions of the offender; (4) the witness's level of certainty at the time of the confrontation; and (5) the length of time between the alleged act and the confrontation. *See Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *Barley v. State*, 906 S.W.2d 27, 34–35 (Tex. Crim. App. 1995).

Spence argues the pretrial identification procedure at issue here was impermissibly suggestive because Collins viewed a single photograph—Spence's driver's license photograph— after the dispatcher had already identified Spence as the owner of the motorcycle. For the purpose of evaluating Spence's ineffective assistance claim, we will assume without deciding that Collins's review of a single photograph was impermissibly suggestive. *See Loserth*, 985 S.W.2d at 543 ("The use of a lone photograph, without any of the traditional safeguards of a lineup or a photographic array, is inherently suspect and has been uniformly condemned by courts."). We therefore weigh the *Biggers* factors "against the corrupting effect of" that review to determine whether the trial court would have abused its discretion by overruling an objection to the reliability of Collins's in-court identification. *See Ibarra v. State*, 11 S.W.3d 189, 196 (Tex. Crim. App. 1999) (internal quotation marks omitted). "If indicia of reliability outweigh suggestiveness then an identification is admissible." *Barley*, 906 S.W.2d at 34.

1.      Witness's opportunity to view the alleged offender

A video of the high-speed chase taken from Collins's dashboard camera showed the offense occurred on a bright, clear day shortly after 11:00 a.m. *See id.* at 35 (noting "the lighting

in which to observe the perpetrator was good"). Collins testified the evading driver's face "was open" and was not covered by anything other than his camouflage sunglasses. *See id.* (noting witness's "view was unobstructed and the witness was able to see a full frontal view"). The State played the video during Collins's testimony, and he pointed out the moment when he saw the driver's face "right out of [his] passenger window." Collins testified that at that moment, the driver was the same distance away from him as the State's counsel table was from the witness stand. *See id.* (noting witnesses viewed offender from "within a few feet to a distance of approximately thirty feet"). Both that testimony and the video permitted the trial court, as gatekeeper of the evidence, to observe the distance between Collins's patrol vehicle and the motorcycle and to gauge Collins's opportunity to view the driver.

2.      Witness's level of attention at the time of the alleged act

Because Collins was a police officer actively trying to detain a fleeing vehicle, he was "more than just [a] casual observer[] of the crime[.]" *See id.* at 35; *Moore v. State*, 140 S.W.3d 720, 731 (Tex. App.—Austin 2004, pet. ref'd) (officer investigating crime "had an incentive to pay attention"). While the video showed Collins spent most of the chase behind the motorcycle, it also showed he was able to observe its occupants during the chase closely enough to contemporaneously describe the driver's beard and the camouflage pattern on his sunglasses, the colors of the shirts worn by the driver and his passenger, the color of the passenger's hair, and the color and make of the motorcycle. *See Webb v. State*, 760 S.W.2d 263, 273 (Tex. Crim. App. 1988) (noting that while identifying witness "did not observe [defendant] for the entire twenty minutes of her ordeal, her attention was unquestionably focused upon him from the start").

### 3. Accuracy of witness's prior description of the alleged offender

During the chase—i.e., before he saw Spence's driver's license photo—Collins described the offender to a dispatcher as a man with a beard and camouflage sunglasses who was driving a maroon Harley Davidson motorcycle with a license plate number of 740T3R; a review of the license plate number showed the motorcycle was registered to Spence. When officers arrested Spence three weeks later, he was in possession of camouflage sunglasses and a different red Harley Davidson motorcycle, this one with a license plate number of 741T3R; again, a review of the license plate number showed this second motorcycle was also registered to Spence.[3] *See Delk v. State*, 855 S.W.2d 700, 707–08 (Tex. Crim. App. 1993) (concluding trial court could have determined in-court identification was reliable where evidence showed that when defendant was arrested, he possessed a vehicle involved in the crime and a jacket like one worn by the offender); *Santos v. State*, 116 S.W.3d 447, 454 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (noting record showed only slight discrepancy between witness's pre-identification description and appellant's characteristics).

### 4. Level of certainty demonstrated by the witness at the time of the confrontation

Collins testified that on the day of Spence's arrest, he was "positive" Spence was the man he had seen driving the evading motorcycle. He also testified that before his supervisor terminated the chase, he "had adequate information to be able to positively identify [the driver] if [he] had the chance." He agreed that because he had been able to look at the driver closely, there was no need to risk any further danger of continuing the chase. *See Delk*, 855 S.W.2d at 707 (noting witness's testimony "that she could have identified appellant if she had not seen the photograph").

---

[3] Spence has never disputed that he owned both motorcycles.

### 5. Time between alleged act and confrontation

Collins viewed Spence's driver's license photograph on the same day as the chase. *See Smith v. State*, 930 S.W.2d 227, 228–29 (Tex. App.—Beaumont 1996, pet. ref'd) (treating witnesses' observation of photo lineup as time of confrontation). Approximately three weeks passed between the chase and Collins's observation of Spence at the scene of his arrest, and sixteen months passed between the chase and the trial. Collins's description to the dispatcher during the chase was consistent with his trial testimony. *See Delk*, 855 S.W.2d at 707 (eighteen-month lapse between crime and in-court identification "[did] not detract from the identification given the details [witness] was able to recall and the consistency in her testimony"); *Santos*, 116 S.W.3d at 455 (describing thirteen months between robbery and trial identification as "relatively short lapse").

After reviewing the totality of the evidence, we believe the trial court could have reasonably concluded Collins's identification of Spence was reliable and admissible. *See Gamboa v. State*, 296 S.W.3d 574, 581–82 (Tex. Crim. App. 2009); *Barley*, 906 S.W.2d at 35; *Delk*, 855 S.W.2d at 706–08. Because Spence has not shown the trial court would have erred by overruling an objection to Collins's identification testimony, he also has not established his trial counsel performed deficiently by failing to raise that objection. *See Burke*, 371 S.W.3d at 257.

We overrule Spence's first issue.

### *Failure to Object to State's Exhibit 3*

In his second issue, Spence argues his trial counsel performed deficiently by failing to object to a photograph admitted as State's Exhibit 3. The State's witnesses testified the photograph showed Spence as he appeared on the day of his arrest in October 2020, and the trial court admitted it without objection from Spence's trial counsel. On appeal, Spence contends that

State's Exhibit 3 was not taken on the day of his arrest, but was instead taken when he was re-booked into a different jail in April of 2021. He argues his trial counsel failed "to spot the completely wrong arrest photo" and that this failure shows counsel did not "perform pretrial investigations regarding the fundamental facts of [his] appearance[.]" The appellate record contains both State's Exhibit 3 and the photograph Spence contends was the booking photograph taken on the day of his arrest.[4]

The record does not show trial counsel's reasons for failing to object to State's Exhibit 3. As explained above, we therefore may not conclude he performed deficiently unless the record supports a conclusion that no reasonable attorney would have failed to object. *See Goodspeed*, 187 S.W.3d at 392. After viewing State's Exhibit 3 and the photograph Spence contends was taken on the day of his arrest, we do not believe the differences in Spence's appearance were so significant that no reasonably competent attorney would have failed to object to State's Exhibit 3. *See id.*; *see also Lopez*, 343 S.W.3d at 143.

We overrule Spence's second issue.

### *Failure to Prepare Alibi Witness*

In his third issue, Spence argues his trial counsel did not adequately prepare a defense witness, Heather Kilpatrick, to testify about Spence's alibi that he was at Kilpatrick's home on the morning of the offense. Spence points to Kilpatrick's testimony that she did not know Spence had been arrested for evading arrest and that she was not asked to testify until a day or two

---

[4] The State argues we cannot consider the photograph Spence contends was taken on the day of his arrest because it was attached to Spence's brief but "was never before the trial court" and is not in the appellate record. We disagree. The photograph is included in the record as part of Spence's timely filed pro se motion for new trial. While the trial court could have properly rejected the pro se motion for new trial on the ground that Spence was not entitled to hybrid representation, nothing in the record affirmatively indicates it did so. We therefore decline the State's invitation to ignore that the motion and its attachments are included in the appellate record.

before trial. He contends that if his trial counsel had adequately prepared Kilpatrick to testify, she may have had time to gather evidence to corroborate her alibi testimony.

As support for this issue, Spence cites several cases in which courts agreed a trial attorney was ineffective because the evidence showed the attorney did not investigate specific information or interview certain witnesses at all. *See Ex parte Amezquita*, 223 S.W.3d 363, 365–66, 368 (Tex. Crim. App. 2006); *Ex parte Welborn*, 785 S.W.2d 391, 392, 396 (Tex. Crim. App. 1990); *State v. Thomas*, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989, no pet); *Harrison v. Quarterman*, 496 F.3d 419, 424–27 (5th Cir. 2007); *Anderson v. Johnson*, 338 F.3d 382, 392–93 (5th Cir. 2003). Here, however, the record contains no evidence demonstrating that Spence's trial counsel wholly failed to interview Kilpatrick or prepare her to testify. While the record appears to support Spence's claim that his trial counsel did not ask Kilpatrick to testify until shortly before trial, it also shows Kilpatrick received enough notice and preparation to appear at trial and offer a relatively detailed account of her recollection of the morning in question. Spence's cited authority is therefore distinguishable and does not establish that trial counsel's preparation of Kilpatrick fell outside "the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833. Furthermore, Spence's trial counsel has not had an opportunity to explain the steps he took to prepare Kilpatrick to testify. *See, e.g.*, *Walker v. State*, 195 S.W.3d 250, 256 (Tex. App.—San Antonio 2006, no pet.).

To the extent Spence contends additional preparation time might have allowed Kilpatrick to gather evidence corroborating her testimony, an ineffective assistance claim that rests in counsel's failure to interview a witness "cannot succeed absent a showing of what the interview would have revealed that reasonably could have changed the result of the case." *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). While Spence

speculates about various forms of evidence that may have corroborated Kilpatrick's testimony, we have previously refused to find ineffective assistance based on speculation about the potential benefits of a witness's testimony. *In re J.F.*, 948 S.W.2d 807, 813 (Tex. App.—San Antonio 1997, no pet.); *see also Walker*, 195 S.W.3d at 256 (noting appellant did not establish that interviews with potential witnesses "would have revealed beneficial information").

We overrule Spence's third issue.

*Failure to Investigate and Object to Statements in Presentence Investigation Report*

In his fourth issue, Spence argues his trial counsel performed deficiently by "failing to investigate and object to false information" in testimony about a presentence investigation report. Jean Davis, the Wilson County supervision officer who prepared Spence's presentence investigation report, testified during the punishment phase that Spence was arrested a second time for evading arrest with a vehicle on December 1, 2020. Spence argues this testimony was false because he still was in jail on the charge at issue here on December 1, 2020. The State appears to concede that Davis's testimony on this point was incorrect, but it argues Spence cannot establish he was prejudiced by his counsel's failure to object.

We will assume without deciding that Spence's trial counsel performed deficiently by failing to object to the purportedly false information in the presentence investigation report.[5] Spence must also establish, however, that it is reasonably likely his punishment would have been different if not for this alleged ineffectiveness. *See Harrington*, 562 U.S. at 112; *Bazan v. State*, 403 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

A trial court has essentially unfettered discretion to assess punishment within the statutorily prescribed range. *See Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006).

---

[5] Spence's pro se motion for new trial alleged his trial counsel "refuse[d] to come see [Spence] to prepare for sentencing [and] to review PSI for possible inaccuracies."

Spence was convicted of a third-degree felony offense that carried an initial punishment range of two to ten years' confinement. TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A); TEX. PENAL CODE ANN. § 12.34. The State sought to enhance Spence's sentence on the ground that he had "previously been finally convicted of two felony offenses, and the second previous felony conviction [was] for an offense that occurred subsequent to the first previous conviction having become final[.]" TEX. PENAL CODE ANN. § 12.42(d). The trial court found two of the felony enhancement allegations were true, and Spence has not challenged those findings on appeal. Accordingly, the statutorily prescribed range for Spence's punishment was imprisonment "for life, or for any term of not more than 99 years or less than 25 years." *See id.* The trial court's sentence of fifty years' confinement fits squarely within that range.

As Spence notes, the State argued during the punishment phase that the purportedly false information showed he had a history "of doing the same thing over and over again."[6] The State also argued, however, that other evidence of Spence's criminal history—evidence he has not challenged on appeal—similarly "show[ed] what he's going to continue to do and for the safety of all communities, the best place for him to be is locked up." For example, the State alleged and presented evidence that Spence had previously been convicted of burglary of a habitation and drug charges, and the trial court found those allegations to be true. *See, e.g.*, *Smith v. State*, 292 S.W.3d 36, 42–43 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 227 S.W.3d 753 (Tex. Crim. App. 2007) (in assessing punishment, trial court may consider extraneous offenses that it finds were proved beyond reasonable doubt). Additionally, the video of the offense at issue here, which the trial court viewed during the guilt-innocence phase of trial, showed Spence driving at speeds of up to 115 miles per hour on the highway and 80 miles per hour on residential and city streets and disregarding several red lights and stop signs in the process. *See Lampkin v. State*,

---

[6] The record shows the State did not otherwise emphasize the false information.

470 S.W.3d 876, 919 (Tex. App.—Texarkana 2015, pet. ref'd) (noting "the nature of the offense charged and the strength of the evidence presented at trial is a factor" in determining whether professional errors during punishment phase established prejudice). While Spence argues no one was injured during the high-speed chase, "the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Rummel v. Estelle*, 445 U.S. 263, 275 (1980). On this record, Spence has not established that but for his trial counsel's alleged ineffectiveness during the punishment phase, the likelihood of a lesser sentence was substantial as opposed to merely conceivable. *See Harrington*, 562 U.S. at 112; *Bazan*, 403 S.W.3d at 13.

We overrule Spence's fourth issue.

*Failure to Urge Spence's Pro Se Motion for New Trial*

In his fifth issue, Spence argues his trial counsel performed deficiently because he did not urge the trial court to consider Spence's pro se motion for new trial. Spence contends he filed the pro se motion "to introduce the proper intake booking photo" to support his challenge to State's Exhibit 3 and "to introduce evidence of, and fully develop assertions of" ineffective assistance of counsel.

Because the record does not show trial counsel's reasons for failing to urge the arguments in the pro se motion for new trial, we are bound by authority that requires us to give counsel the benefit of the doubt and assume he had a tactical or strategic reason "if any reasonably sound strategic motivation can be imagined."[7] *Johnson*, 624 S.W.3d at 586; *Mason v. State*, No. 04-02-00281-CR, 2003 WL 1237947, at *3 (Tex. App.—San Antonio Mar. 19, 2003, pet. ref'd) (mem. op., not designated for publication) (holding appellant failed to rebut presumption of effective

---

[7] In his brief, Spence contends his trial counsel told him the arguments he wanted to assert would "piss of[f] the judge [and] only serve[] to garner the 99 year end of the 25–99 year sentencing spectrum."

assistance where record showed appellant "wanted to pursue a motion for new trial and [appointed counsel] did not do so" but was silent as to counsel's reasons for refusing to pursue motion). While Spence contends his pro se motion for new trial asserted "a facially plausible claim . . . regarding the submission of [the] booking photo," it is possible his trial counsel disagreed with that assessment. On this record, we cannot say that no reasonably competent counsel would have declined to urge Spence's pro se motion for new trial. *See Goodspeed*, 187 S.W.3d at 392.

Spence also argues his trial counsel did not timely file a notice of appeal. The record does not support this assertion. The filing of the pro se motion for new trial extended the deadline to file Spence's notice of appeal until "90 days after the day sentence [was] imposed . . . in open court." *See* TEX. R. APP. P. 26.2(a)(2). Because the trial court imposed Spence's sentence in open court on March 30, 2022, the notice of appeal was due by June 28, 2022. *See id.* Spence's trial counsel filed the notice of appeal on May 11, 2022—well in advance of the deadline.

We overrule Spence's fifth issue.

### Admission of Expert Testimony

In his final issue, Spence raises his only non-ineffective assistance of counsel argument. In this issue, he argues the trial court erred by admitting opinion testimony from a narcotics investigator, Jason Hinds, because the State did not designate Hinds as an expert witness. He also argues Hinds was not qualified to offer the opinions he expressed at trial. The State contends Spence waived these issues because he did not raise them below.

### Standard of Review and Applicable Law

When an appellate complaint turns on the admission of evidence, the complaining party "must, at the earliest opportunity, have done everything necessary to bring to the judge's

attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question." *Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) (alternation in original, internal quotation marks omitted). The issue raised on appeal "must correspond to the objection made at trial." *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). "An objection stating one legal theory may not be used to support a different legal theory on appeal." *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). "[I]f an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review." *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

### *Application*

When officers arrested Spence, they found $8,000 in cash, a scale, a firearm, and twenty-seven grams of a substance that was later confirmed to be methamphetamines in a bag on a motorcycle registered to Spence.[8] During the punishment phase of the trial, Hinds testified that based on his experience as a narcotics investigator, he believed the money was proceeds of or otherwise connected to drug trafficking. When Spence objected to this testimony as speculative and outside Hinds's personal knowledge, the State represented that Hinds was offering expert testimony. At that point, Spence did not object to the State's failure to designate Hinds as an expert or to Hinds's qualifications to testify as a witness. Because Spence's issues on appeal do not comport with the objections he asserted below, he did not preserve those issues for our review. TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

We overrule Spence's sixth issue.

---

[8] In a single sentence in his appellate brief, Spence contends the "drug evidence relied upon was seized in violation of [the Fourth Amendment] from third party." But he did not present any argument, record citations, or authority to support this contention. TEX. R. APP. P. 38.1(i). For that reason, we do not consider it. *Guidry v. State*, 121 S.W.3d 849, 851 n.1 (Tex. App.—Beaumont 2003, no pet.).

**CONCLUSION**

Having overruled each of Spence's arguments on appeal, we affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH